**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

1
2
3   DIGCOM, INC.,                          )
                                           )
4              Plaintiff,                   )
                                           )          3:13-cv-00177-RCJ-WGC
5         vs.                               )
                                           )          **ORDER**
6                                           )
                                           )
7   PANTECH WIRELESS, INC.,                 )
                                           )
8              Defendant.                   )
                                           )
9   _____        )

10

11          In this patent infringement action (the "Pantech Action"), Plaintiff Digcom, Inc.

12  ("Digcom"), a Nevada corporation purporting to do business in Incline Village, Nevada, has sued

13  Defendant Pantech Wireless, Inc. ("Pantech"), a Georgia corporation, (Compl. ¶¶ 1–3, ECF No.

14  1, at 2), alleging that several Pantech devices (the "Accused Products") infringe four Digcom

15  patents (the "Asserted Patents"), (*id.* ¶¶ 5–85). Pantech now moves, under 28 U.S.C. § 1404(a),

16  for an order transferring this action to the United States District Court for the Southern District of

17  California. (Mot. Trans., ECF No. 83). For the reasons stated herein, the Court now grants the

18  motion.

19          Further, in a companion case initiated on the same day as this action, *Digcom, Inc. v. ZTE*

20  *(USA), Inc.*, No. 3:13-cv-00178-RCJ-WGC, (the "ZTE Action"), Defendant ZTE has filed a

21  substantively identical motion to transfer. (Case No. 3:13-cv-00178-RCJ-WGC, ECF No. 56). As

22  Digcom acknowledges, these two cases "alleg[e] infringement of the same patents . . . [and] will

23  involve the same claim construction issues." (Opp'n Mot. Trans., Case No. 3:13-cv-00177-RCJ-

24  WGC, ECF No. 86, at 8). Accordingly, in order to consolidate its consideration of the *Markman*

25  issues, this Court has issued harmonized case schedules in the two actions. (*Id.*). With respect to

26
27
28

1

the pending motions to transfer, which are, as Digcom contends, "virtually identical," (*id.*), the

facts relevant to the Court's analysis are the same. Therefore, in a separate order, the Court will

adopt its reasoning in this order and likewise grant ZTE's motion to transfer.

## I.   LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court

may transfer any civil action to any other district or division where it might have been brought."

28 U.S.C. § 1404(a). Section 1404(a) "is intended to place discretion in the district court to

adjudicate motions for transfer according to an 'individualized, case-by-case consideration of

convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting

*Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). A motion to transfer under § 1404(a) "calls on

the district court to weigh in the balance a number of case-specific factors." *Id.* Courts in the

Ninth Circuit consider the following factors: (1) the location where the relevant agreements were

negotiated and executed; (2) the state that is most familiar with the governing law; (3) the

plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts

relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of

litigation in the two forums; (7) the availability of compulsory process to compel attendance of

unwilling non-party witnesses; and (8) the ease of access to sources of proof. *Jones v. GNC*

*Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000).

## II.   ANALYSIS

As a threshold matter, venue is proper in the Southern District of California. As noted

above, this Court "may transfer any civil action to any other district or division where it might

have been brought." 28 U.S.C. § 1404(a). Patent infringement actions "may be brought in the

judicial district where the defendant resides, or where the defendant has committed acts of

infringement and has a regular and established place of business." 28 U.S.C. § 1400(b).

Corporate defendants, such as Pantech, reside in "any judicial district in which such defendant is

subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C.

§ 1391(c)(2); *see also VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1584

(Fed. Cir. 1990) (holding that the language of § 1391(c) applies to § 1400(b)).

Digcom argues that Pantech's undisputed evidence that it sells the Accused Products in

California does not demonstrate the minimum contacts necessary for personal jurisdiction.

(Opp'n, ECF No. 86, 16–18). This argument is unpersuasive for at least two reasons: (1) if

correct, it would apply with equal force against Digcom's assertion that this Court has personal

jurisdiction, which too is based on Pantech's sales in the forum, (Compl. ¶ 21, ECF No. 1, at 6),

and would therefore require dismissal under Rule 12(b)(2); and (2) "Pantech does not contest

personal jurisdiction in the Southern District of California for purposes of this action," (Mot.

Trans., ECF No. 83, at 12). Accordingly, venue is proper in the Southern District of California,

and the Court now turns to the *Jones* factors to determine whether convenience and the interests

of justice warrant a transfer. *See Jones*, 211 F.3d at 498–99.

**A.   Factors 1 and 2: Location of Relevant Agreements and Familiarity with Relevant Law**

Because Digcom does not allege any relevant agreements, and because federal patent law

is uniform, the first two factors are neutral.

**B.   Factors 3 and 4: Plaintiff's Choice of Forum and the Parties' Contacts with the Forum**

Factors three and four are also neutral in this case. While "[a] plaintiff's choice of forum

generally receives deference in a motion to transfer venue," *Operation: Heroes, Ltd. v. Procter*

*& Gamble Prods., Inc.*, 903 F. Supp. 2d 1106, 1113 (D. Nev. 2012) (Du, J.), such deference is

unwarranted where a plaintiff's manipulation would frustrate the purposes of the venue laws.

*Hertz Corp. v. Friend*, 559 U.S. 77, 97 (2010) (urging courts to ensure that the purposes of jurisdictional and venue laws are not frustrated by a party's attempted manipulation); *see also Amazon.com v. Cendant Corp.*, 404 F. Supp. 2d 1256, 1260 (W.D. Wash. 2005) ("Where the action has little connection with the chosen forum, less deference is accorded plaintiff's choice, even if plaintiff is a resident of the forum."). Indeed, a court need not defer to a plaintiffs choice of forum that is based on a "presence [that] appears to be recent, ephemeral, and an artifact of litigation." *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010); *see also In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011) (holding that a transfer was appropriate where the plaintiff incorporated in the chosen forum sixteen days before filing suit). Rather, "[i]n patent infringement actions, the preferred forum is 'that which is the center of gravity of the accused activity.'" *Amazon.com*, 404 F. Supp. 2d at 1260 (quoting *Ricoh Co., Ltd., v. Honeywell, Inc.*, 817 F. Supp. 473, 482 n.17 (D.N.J. 1993)). "The district court ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production." *Id.* (internal quotation marks omitted).

Here, it is undisputed that Digcom was formed as a Nevada Corporation in December 2012—merely four months *before* it initiated this action. Furthermore, Pantech cites uncontroverted evidence demonstrating that the address that Digcom lists in the complaint, 923 Tahoe Blvd., Suite 210, Incline Village, Nevada, is a suite in a strip mall that was occupied by a photography studio as of July 5, 2013—three months *after* Digcom initiated this action. (Nelson Decl., Exs. 1, 2, ECF No. 84).

In response Digcom asserts that it leased the suite in November 2012, (Feher Decl., ¶ 9, ECF No. 86-2), but it does not provide a copy of the lease or any other evidence showing when it was entitled to take possession of the premises or the agreed lease term. It further argues that

because it is not a retail business and does not need to promote itself broadly, it obtains no

benefit from advertising its presence. (Opp'n Mot. Trans., ECF No. 86, at 12). While this may be

true, it certainly does not explain why Digcom maintained a sign advertising that its space was

occupied by a photography studio for more than nine months after it allegedly established its

office. Indeed, Digcom does not even attempt to explain this evidence. Instead, it contends that at

some undisclosed time it had as many as three student employees in the office. (*Id.* at 6).

Tellingly, however, Digcom is entirely silent as to when these students (or any other employees)

were hired, how long they were employed, and their assigned tasks, which, for all the record

shows, could have consisted of merely moving boxes and furniture into the office space.

Digcom's silence is deafening, and its presence in Nevada is an ephemeral artifact of this

litigation. Such a "presence" does not weigh towards retaining venue. *See In re Toyota Motor

Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014) (applying Fifth Circuit law) (vacating a district

court's order denying a motion to transfer where the district court failed to consider, *inter alia*, a

plaintiff's "recent opening of an office"). Similarly, the Court finds that aside from marketing its

products in Nevada, Pantech has no substantial contacts with this forum. If anything, and as

explained more fully below, the record reflects that the parties' contacts with the Southern

District of California are far more significant than any contacts they may have with Nevada.

Therefore, factors three and four do not point towards retaining venue.

### C. Factors 5 and 6: Contacts Relating to Plaintiff's Cause of Action in Nevada and the Differences in the Costs of Litigation in the Two Forums

Pantech contends that factors five and six favor a transfer. The Court agrees. The true

locus of this case is in California. It is undisputed that all of the material events in this case, i.e.,

the contacts relating to the development of the alleged inventions in the Asserted Patents,

occurred outside of this District and that most of them occurred in the Southern District of

California. (*See* Mot. Trans., ECF No. 83, at 17). Indeed, each of the inventions described in the Asserted Patents was conceived and reduced to practice in California.

It is further undisputed that during the twenty years preceding this litigation, Dr. Kamilo Feher ("Dr. Feher"), Digcom's sole owner, officer, and director, and the sole inventor of all of the Asserted Patents, operated Digcom's predecessor entity, Digcom, Inc. (a California corporation), from his California home. (*See* Pak Decl. ¶¶ 6–7, 9, 17, ECF 83-1, at 2–4). It is also undisputed that Dr. Feher filed and prosecuted the Asserted Patents from California, (*id.* ¶¶ 2–9), and that in 2010 and 2012 he brought related patent suits in the Southern District of California. (Copies of Complaints, ECF No. 83-18).

Furthermore, the processors in the Accused Products are manufactured by Qualcomm Inc., and a few chipsets in some of the Accused Products are manufactured by Broadcom Corp. (Kim Decl. ¶ 4 ("Processors used in the accused Pantech devices are manufactured by Qualcomm Inc.," and "[a] few chip-sets used in some of the accused Pantech devices are manufactured by Broadcom Corp." )). In fact, it is undisputed that Qualcomm's components are implicated in every single claim element identified in Digcom's infringement contentions. (*See* Reply, ECF No. 90, at 12). Not surprisingly, Pantech asserts that third-party witnesses from Qualcomm will play a critical role in its non-infringement defense. (Mot. Trans., ECF No. 83), and Digcom cites no evidence suggesting otherwise. Yet, it is undisputed that Qualcomm has no research, product design, or sales facilities in Nevada or within 100 miles of Reno, Nevada. (Capozzoli Decl. ¶¶ 4–5, ECF No. 83-22). It is likewise undisputed that the majority of Qualcomm's engineers, other foreseeable third-party witnesses, and relevant documents are located in or around the Southern District of California, where the components at issue were developed. (*Id.*). The bulk of Broadcom's critical witnesses and documents are also located in

California. (Patel Decl., ECF No. 83-21). Accordingly, factors five and six weigh towards

granting the motion to transfer.

**D. Factors 7 and 8: Availability of Compulsory Process to Compel Unwilling Witnesses and Ease of Access to Sources of Proof**

The seventh factor strongly favors a transfer. This Court lacks the authority to compel the

nonparty Qualcomm and Broadcom witnesses to testify at trial. *See* Fed. R. Civ. P. 45(b)(2),

45(c)(3)(A)(ii) (a court cannot serve a subpoena upon a nonparty witness outside 100 miles of

the district in which the court sits). However, courts in the Southern District of California have

the power to subpoena nonparty witnesses located anywhere in California, including the

foreseeable Qualcomm and Broadcom witnesses. *Brackett v. Hilton Hotels Corp.*, 619 F. Supp.

2d 810, 821 (N.D. Cal. 2008) ("The California district courts have the power to subpoena

witnesses throughout the state pursuant to FRCP 45(b)(2)(C), which provides that a subpoena

may be served anywhere within the state of the issuing court if a state statute allows statewide

service. Section 1989 of the California Code of Civil Procedure is the state statute authorizing

such service."). As detailed above, Pantech intends to rely on such witnesses while defending

this action. In contrast, Digcom has not identified any nonparty witnesses. Therefore, the

availability of compulsory process in the Southern District of California strongly favors

granting the motion to transfer.

Finally, the parties' arguments concerning the eighth factor are not particularly

persuasive. However, even if they are easily transported, the third-party documents upon which

Pantech intends to rely are located in or near the Southern District of California and not Nevada.

Thus, this factor favors a transfer, but only slightly.

**E.  Balancing the *Jones* Factors**

On balance, the *Jones* factors favor transferring this case to the Southern District of California. While Nevada is Digcom's alleged home, recent state of incorporation, and preferred forum, neither this case nor Digcom's witnesses have any meaningful connection to Nevada. In contrast, considerations of convenience and the interests of justice, including Pantech's ability to subpoena foreseeable third-party witnesses, favor granting the motion to transfer. Furthermore, Digcom has not identified any detriment that would result from litigating in California. Pantech is therefore entitled to a transfer of venue, and its pending motion is granted.

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion to Transfer Venue (ECF No. 83) is GRANTED.

IT IS FURTHER ORDERED that the Clerk of the Court shall TRANSFER this case to the Southern District of California, close the case administratively in this District, and terminate all other pending motions in this District.

IT IS SO ORDERED.

Dated:  August 26, 2014.

_____
ROBERT C. JONES
United States District Judge